## GARTHE BROWN, TRUSTEE OF AUBREY DAVIS TRUST *v.* DEPARTMENT OF REVENUE

Lee Hansen, Jones & Brown, Portland, represented plaintiff.

Glen Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered December 28, 1970.

LOREN D. HICKS, Judge Pro Tempore.

The issue in this case is the true cash value for the tax year 1969-70 of land which is leased to an operator as part of a large surface parking lot in down-

town Portland on S. W. First between Morrison and Alder Streets. The Department of Finance for Multnomah County, using the market data approach, valued the property at $195,000. The plaintiff trustee, relying on the income capitalization approach, contends for a valuation of $168,000.

Plaintiff asserts that a lease covering the property until September 1, 1977, limits the use and income of the property and thus limits its true cash value. He also contends the land is of less value than other property in the area because its access is restricted by the existing traffic pattern and the on and off ramps of the Morrison Street Bridge. Furthermore, the plaintiff claims the comparable sales used by defendant were made under special circumstances causing them to be unrelated to the determination of the value of his property. Plaintiff argues that the county gave insufficient consideration to these limiting factors and used the wrong approach for valuation.

■ The true cash value of property for ad valorem tax purposes must be determined by using the market data approach based on relevant data of comparable sales whenever there is a market for the kind of property being assessed and whenever relevant comparable sales exist. *Portland Canning Co. v. Tax Com.*, 241 Or 109, 404 P2d 236 (1965). This rule is not affected by the fact the property is under a parking lot lease with more than eight years yet to run.

■■ The lease is evidence of the earning ability of the property and may be significant in the income approach to valuation, and is one of the several factors that may be considered in any appraisal. A lease, however, cannot be controlling in a determination of either highest and best use or of value for purposes of taxa-

tion. The valuation, and thus the tax, is on the land not on the lease or any other single interest in the land. The income approach, advocated by plaintiff, may be used in combination with the market data approach but it cannot be relied upon when valid market data exists.

The lease in question here was adequately considered by the county appraiser. It provided for an annual net return of $16,800, after property taxes and other expenses, which amounts to slightly more than 8½ percent on the county's valuation figure of $195,000. There was no evidence that 10 percent suggested by plaintiff is the correct, necessary or more common rate of return. Eight and one-half percent capitalization is reasonable under the circumstances and supports the county's market data estimate of value.

On the question of restricted access, the evidence showed that the land in question makes up the eastern portion of the parking lot, the smaller western portion being owned by another party. The lessee uses the two properties as one large lot. Location of the bridge ramps immediately to the north and east causes the traffic to be channeled along narrow, divided portions of the streets next to plaintiff's land, and dictates that access to the lot be from Second Street onto the third party's land. The restricted access and dependency on the adjoining property certainly have an adverse effect upon the value of the plaintiff's land. These limitations, however, were recognized and considered by the county appraiser and are adequately reflected in his valuation of $195,000.

Although the six sales analyzed along with other market data in the county's valuation included special

circumstances of acquisition, location, size, improvements and future planning which resulted in sales prices higher than the value attributed to the subject property, the sales were bona fide market transactions and were of property sufficiently similar and close to the land in question to be reliable. In comparing plaintiff's property the county appraiser concluded that it was less desirable than the comparables and made appropriate allowances for its limitations. He also made appropriate adjustments in his comparison for the dissimilarities in the properties and for the special circumstances of the sales.

The court finds that the evidence did not preponderate in favor of plaintiff's claim that the county's valuation approach was inadequate or that the assessment was excessive and unlawful.

The assessed value of plaintiff's property as of January 1, 1969, is set at $195,000.